David Abrams, Attorney at Law
P.O. Box 3353 Church Street Station
New York, New York 10008
Tel. 212-897-5821 dnabrams@gmail.com



United States District Court
Southern District of New York

_____

United States of America ex rel.      )
TZAC, Inc.,                            )
                                       )
        Plaintiff-Relator,        )
                                       )
     - against -                    )   Index No.:
                                       )
Norwegian People's Aid       ,         )   **COMPLAINT**     JUDGE WOODS
a/k/a Norsk Folkehjelp                 )
                                       )
        Defendant.                )
_____)



Plaintiff-Relator, complaining of the Defendant by its attorney, David Abrams, Attorney at Law, respectfully sets forth and alleges as follows:

## I. Nature of the Case

1. This is a false claims act claim. The Qui Tam Plaintiff and Relator, TZAC, Inc. ("The Zionist Advocacy Center" or "Relator"), alleges that the Defendant obtained USAID funding by means of fraudulent certifications that it does not support terrorism.

## II. Parties

2. The Defendant Norwegian People's Aid a/k/a Norsk Folkehjelp ("NPA") is a Norwegian non-governmental organization based in Oslo, Norway. Although it is located overseas, it regularly transacts business in the United States and in the Southern District of New York. For example, NPA participates in the United Nations Commission on Women which has an annual conference in New York. NPA also regularly sends representatives to the Southern District of New York to participate in landmine and other disarmament activities in the Southern District.

[continued on next page]

3. NPA is virulently anti-Israel. For example, its Facebook page proudly displays a picture of "Palestine" in which Israel has disappeared:



4. Indeed, NPA's 2008 financial report contains a direct link to a web site called "Boycott Israel!" -- www.boikottisrael.no. Was there a call for a boycott of countries such as Iran which hang homosexuals? Of course not. Instead, in 2008, NPA was assisting the Iranian army with mine clearance operations pursuant to an oil contract between Iran and Statoil, a Norwegian petrochemical company. Evidently human rights are more of an issue for NPA when they involve Jewish people taking reasonable steps to defend themselves.

5. Relator TZAC, Inc. ("The Zionist Advocacy Center" or "Relator" or "Plaintiff") is a subsidiary of the World Jewish Life Fund, Inc., a New York not-for-profit corporation. Its principle office is the State of New York, County of New York.

**III. Compliance With Requirements of Suit**

6. This matter has been or will be filed under seal pursuant to 31 U.S.C. Section 3730(b); at or about the same time, a copy of the Complaint, Sealing Order, and Relator's disclosure of evidence were or will be served on the Department of Justice and the United States Attorney for the Southern District of New York.

7. Relator will not serve the Complaint or any other papers in this matter until and unless it becomes unsealed. Thus, if the Complaint is served on the Defendant, it means that the matter has been duly unsealed.

**IV. Jurisdiction and Venue**

8. This Court has jurisdiction pursuant to 31 U.S.C. Section 3732(a) which provides that this type of action may be brought in any district where the Defendant resides or transacts business. In this case, NPA regularly transacts business in the Southern District of New York.

**V. A Brief Statement of the Fraudulent Scheme**

9. NPA has received substantial USAID funding in recent years. In order to be eligible for funding, NPA had to execute certifications indicating that it has not provided material support or resources to terrorist persons or entities in the last 10 years. ("Anti-Terrorism Certifications" or "ATC's") As set forth below, these certifications were false when made.

**VI. The Specific Fraudulent Statements of the Defendant**

10. In order to obtain USAID dollars, NPA had to execute ATC's in connection with grants SG-R-SS1301-29 (7/1/14); S130660 (3/21/13); 96011309 (1/1/13);

4

AIDOFDAG1200062 (9/5/12); AIDFFPG0900003 (3/24/11); AIDOFDAG1100172 (8/26/11); and others.

11. Among other things, the ATC form contained certifications as to support of terrorism. The terrorism certification states as follows:

> The Recipient to the best of its current knowledge, did not provide within the previous ten years, and will take all reasonable steps to ensure that it does not and will not knowingly provide, material support or resources to any individual or entity that commits, attempts to commit, advocates, facilitates, or participates in terrorist acts, or has committed, attempted to commit, facilitated, or participated in terrorist acts . . . .

The document in turn defines "material support or resources" as follows:

> currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses false documentation or Identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials."

12. As set forth in more detail below, NPA has provided material support or resources to Hamas, the Popular Front for the Liberation of Palestine, Islamic Jihad, and the Islamic Republic of Iran.

13. At all times relevant to this matter, Hamas; the Popular Front for the Liberation of Palestine; and Islamic Jihad were Designated Foreign Terrorist Organizations. At all times relevant to this matter, the Islamic Republic of Iran was a designated state supporter of terrorism.

14. Indeed, most of these organizations are well known for their genocidal rhetoric; their eagerness to attack innocent people, particularly Jewish Israelis, and/or their virulent anti-Semitism.

**VI.  The Acts of the Defendant**

**A.  Direct Activities**

15. Between 2001 and 2008, NPA assisted the armed forces of the Islamic Republic of Iran with mine clearance operations in western Iran. The assistance took the form of

5

documentation, quality assurance, technical assistance and mine risk education for the (Iranian) military staff involved.

16.   It should be noted that this assistance to Iran was not simply the result of altruistic motives. The assistance was funded by two Norwegian energy companies, Norsk Hydro and Statoil which had been involved in oil contracts with Iran. (Indeed, in 2006 Statoil was convicted of bribing Iranian officials to obtain such contracts.) Thus, it appears that NPA was compensated by Norwegian industry as part of a scheme to ingratiate or compensate the Iranians for lucrative energy contracts.

**B.    Activities Through Partners**

17.   According to NPA's web site, it frequently operates through "partners" abroad. One such "partner" is an entity known as the Palestinian Center for Democracy and Conflict Resolution ("PCDCR"). Another such "partner" is the Palestinian Non-Governmental Organizations Network ("PNGO"). Another such "partner" is the Institute for Development studies ("IDS.")

18.   Between 2009 and 2012, NPA specifically funded PCDCR, among other things, to train police officers in Gaza regarding domestic violence.

19.   Following are photographs of one such session:





20. Of course all police officers in Gaza are agents and employees of Hamas. Indeed, in the following photograph, which is also of a PCDCR training session at a Gaza police station, the image of what appears to be Khaled Mashaal, the leader of Hamas, can be seen displayed prominently on the station building:



21. Moreover, one such session in July of 2012 included Colonel Yahya Shobaki, the inspector general of the general directorate of training in Gaza.

22. In or about March of 2010, PCDCR organized a conference to discuss reconciliation among Palestinian factions, many of which are designated as terrorist entities. A Hamas spokesman, Dr. Ismael Rudwan, was permitted to attend and speak. Similarly, Nafetheze Azam from Islamic Jihad and Kayed al Ghoul from the Popular

7

Front for the Liberation of Palestine participated. (NPA has been working with PCDCR since 2007.)

23. Another PCDCR conference in July of 2012 included Ahmed Yousef, a Hamas spokesman and an unnamed representative of the Popular Front for the Liberation of Palestine.

24. In September of 2013, PCDCR organized a meeting under its "Stronger Control Better Justice" program the purpose of which was to train corrections officers in Gaza in conflict resolution. Of course since Hamas is in control in Gaza, any such corrections officers and the institutions they work for are effectively part of Hamas.

25. A PNGO conference in December of 2014 featured Khalida Jarrar, a member of the Palestinian Legislative Council and the Popular Front for the Liberation of Palestine.

26. In June of 2014, IDS organized a meeting to promote youth participation in reconciliation between Fatah and Hamas; IDS invited Mushir al-Masri, a Hamas member of the Palestinian Legislative council and Hamas spokesman who attended the meeting. Photos of the meeting are below. Mushir al-Masri is not merely a Hamas spokes, he also personally supports and encourages terrorism. For example, in November of 2014 when 5 Jewish Israelis were slaughtered in cold blood in a synagogue in Jerusalem, Mushir al Masri called the attack a "heroic action" and characterized the attackers as "heroes."

27. In December of 2013, IDS held a meeting, directly funded by NPA, to encourage youth participation in Palestinian political parties. The meeting was attended by Huda Naim, a Hamas representative and member of the Palestinian Legislative Council and Dr. Bassem Naim, a Hamas minister.

28. In February of 2013, IDS representatives had met with the same Bassem Naim to discuss cooperation in support of the "Palestinian cause" and issues of "Palestinian youth."

29. Throughout this entire period, IDS held numerous meetings, directly funded by NPA, to promote the participation of Arab youth in Palestinian political parties including such groups as Hamas and the Popular Front for the Liberation of Palestine. Many of these meetings were attended by officials from these terrorist groups.

30. The meetings were part of the "Youth of Today, Leaders of Tomorrow" program directly funded by NPA.

31. Following are photos of the June 2014 meeting. The individual in the center of the group of 3 men with microphones is Mushir al Masri, a Hamas member of the Palestinian Legislative council and Hamas spokesman. The logo of NPA is clearly visible in the banner behind al Masri, right next to the map logo which erases Israel.



10



32.  As can be seen from the photos, the accommodations were decent; refreshments were served; and NPA's logo was prominently on display.

33.  Indeed, in 2013 NPA proudly boasted on its web site that through IDS it had trained Nisreen Abu Amra, a youth nominated by the Democratic Front for the Liberation of Palestine ("DFLP"), in order to help youth be more represented in Palestinian factions.

11

Although it is true that DFLP is no longer a designated terrorist organization, the article makes clear that the project involved coordination with "all" of the factions; based on the above it is clear that this includes Hamas and PFLP which continue to be designated terrorist organizations.

34. Further, in connection with the "Youth of Today Leaders of Tomorrow" program, IDS executed memoranda of understanding with the Palestinian political parties.

35. The above activities constitute "material support or resources" in various ways. At a mundane level, NPA knowingly provided meeting facilities and refreshments to terrorist officials. In addition, by funding meetings which involved terrorist officials and other rival groups, both terrorist and non-terrorist, NPA helped provided the opportunity for terrorists to network; to build bridges with other organizations; and to work out their difference, thereby leaving them with more resources to devote towards their illicit aims. Similarly, with respect to the mine removal assistance and domestic violence training, NPA's assistance would have helped to free up resources for use in the terrorists' illicit aims.

36. Indeed, it appears that NPA's assistance to Iran over the years was part of a deal to help Iran export oil. This is particularly ironic and hypocritical given NPA's vocal support of international bans on nuclear weapons. Surely NPA is aware that Iran has been using much of its oil revenue to construct underground Uranium enrichment facilities.

37. Further, by facilitating recruitment of Arab youth, NPA is helping organizations such as Hamas and the Popular Front for the Liberation of Palestine to preserve themselves over time and maintain their influence.

38. Thus, it is clear that NPA has continually and systematically provided terrorists and terrorist entities with training, legitimacy, a platform to spread their hateful,

genocidal, twisted views; and the opportunity to network, recruit, and improve their relationships with other organizations, both terrorist and non-terrorist.

39. Moreover, it appears that NPA shares the same goal as the above organizations -- the complete elimination of Israel.

## VII. (Count I) Violation of the False Claims Act

40. The False Claims Act imposes liability on a person or entity who " knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" 31 U.S.C. Section 3729(a)(1)(B)

41. The Courts have held that this can include false statements regarding eligibility to participate in a program. See *United States ex rel. Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 116 (2d Cir. 2010), rev'd on other grounds, 131 S.Ct. 1885 (2011) ("[C]laims may be false even though the services are provided as claimed if, for example, the claimant is ineligible to participate in the program.")

42. Thus, NPA's certifications regarding support of terrorism violated the False Claims Act because they were false and required for eligibility for USAID dollars.

[continued on next page]

## VIII. Relief Sought

43. On behalf of the government, Relator is seeking judgment for the triple damages and civil penalties set forth in 31 U.S.C. Section 3729.

44. According to the government spending web site, NPA received at least approximately $13.5 million in USAID grant funds over the last 6 years. According its own financial reports, NPA received over 200,000,000 Norwegian Kroner from USAID over the past 6 years, which is equal to approximately $30 million. These funds would have been received as a result of fraudulent certifications including those referred to above.

45. Accordingly, Relator seeks judgment in the amount of $90 million against NPA and in favor of the United States, together with costs, interest, civil penalties, an appropriate qui tam award, and such other and further relief as the Court deems just.

Respectfully submitted,

*[signature]*

David Abrams, Attorney at Law
Attorney for Relator
The Zionist Advocacy Center

P.O. Box 3353 Church Street Station
New York, NY 10008
Tel. 212-897-5821
Fax 212-897-5811

Dated: New York, NY
June 23, 2015